UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

EDWIN RUIZ,                               :
     Plaintiff,                          :
                                         :
     v.                                  :     Case No. 3:20-cv-316 (SRU)
                                         :
CTO TARANOVICH, ET AL.,                   :
     Defendants.                         :

## **INITIAL REVIEW ORDER**

Edwin Ruiz ("Ruiz"), currently incarcerated at Osborn Correctional Institution

("Osborn") in Somers, Connecticut has filed a second amended complaint bringing claims under

42 U.S.C. § 1983 against eight officials associated with the Connecticut Department of

Correction ("DOC"). Ruiz has additionally filed a motion to have the defendants served. For the

reasons set forth below, I will dismiss the second amended complaint in part and deny the

motion for service. I will additionally grant Ruiz leave to file a third amended complaint.

**1.     Second Amended Complaint [Doc. No. 28]**

Ruiz is currently serving a ten-year sentence that was imposed on November 13, 2015

following a felony conviction in Hartford Superior Court.[1] He filed the original complaint in the

case at bar on March 9, 2020; he amended the complaint on August 4, 2020 and again on January

26, 2021. *See* Doc. No. 17, 25. In the Second Amended Complaint, Ruiz brings claims arising

out of his incarceration at Garner Correctional Institution ("Garner") in 2017 against eight

defendants: Officer Taranovich; four correctional officers employed at Garner during the

relevant time period identified as Officer John Doe 1, Lieutenant John Doe 2, Officer John Doe 3

---

[1] On November 13, 2015, in *State v. Ruiz*, Docket No. HHD -CR14-0676647-T, a judge in the Connecticut Superior Court for the Judicial District of Hartford sentenced Ruiz to ten years of imprisonment followed by ten years of special parole.  *See* STATE OF CONNECTICUT JUDICIAL BRANCH, Criminal/Motor Vehicle Conviction Case Detail, *available at* https://www.jud.ct.gov/crim.htm.

and Officer John Doe 4; a psychiatrist employed at Garner identified as John Doe 5; and nurses employed at Garner identified as Jane Doe 1 and 2.

## I.   Standard of Review

Under section 1915A of Title 28 of the United States Code, a court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. That standard of review "applies to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid a filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (citation omitted).

Although detailed allegations are not required, a complaint must include sufficient facts to afford the defendants fair notice of the claims and grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.   Factual Allegations

On March 30, 2017 Ruiz confronted Officer Taranovich about an issue with certain items

of Ruiz's personal property that had gone missing. SAC Doc. No. 28 at ¶ 9. Officer Taranovich pushed Ruiz's shoulder and told him to get back into his cell and "lock up." *Id.* at ¶¶ 10-11. In reaction to the push, Ruiz took a swing at Officer Taranovich, but missed, making no contact. *Id. at* ¶ 12. Officer John Doe 1, who was standing behind Ruiz, grabbed Ruiz and tackled him to the ground. *Id.* at ¶ 13. While he was being taken down, Lieutenant John Doe 2 began spraying Ruiz with mace. *Id.* at ¶ 14.

Ruiz, who was on the ground, put his hands behind his back and did not resist. *Id.* From the ground, he told the officers that he could not breathe. *Id.* at ¶¶ 15-16. Lieutenant John Doe 2 did not stop—instead, he pushed the can of mace up to Ruiz's face and sprayed mace into his mouth while Officer Taranovich pushed his knee into Ruiz's neck and began hitting him in the face. *Id.* at ¶¶ 17-18. Ruiz estimates that Officer Taranovich hit him at least ten times. *Id.* at ¶ 18. Officer John Doe 3 and John Doe 4 began hitting Ruiz's legs and body. *Id.* at ¶ 19. The officers continued to hit him until another correctional officer arrived on the scene and warned them that the assault was being captured on camera. *Id.* at ¶ 20.

Ruiz was then escorted to the mental health inpatient housing unit ("IPM") where level 5 mental health patients were housed. *Id.* at ¶ 21. Ruiz was placed on suicide watch and was not permitted to shower or wash the mace off of his face or body. *Id.* at ¶ 23. Ruiz was left in IPM from March 30, 2017 until April 12, 2017. *Id.* at ¶ 24.

As a result of the assault, Ruiz suffered a broken nose and severe swelling and bruising in his face. *Id.* at ¶ 25. During the time he was kept in IPM, he was assessed daily by two nurses— Jane Doe 1 and Jane Doe 2. *Id.* at ¶ 26. He repeatedly told the nurses that his nose was broken; additionally, his face was visibly swollen and bruised. *Id.* at ¶ 29. He was also examined by John

3

Doe 5, a psychiatrist. *Id.* ¶ 31. None of those medical providers provided treatment for the swelling, bruising or broken nose. *Id.*

On April 12, 2017 Ruiz was returned to the general population. *Id.* at ¶ 32. Correctional Officer Beltran asked Ruiz what had happened, and Ruiz explained the assault and told Beltran that he planned to sue. *Id.* at ¶ 35. He was then called to the Lieutenant's office, where he was given a disciplinary report and sent to segregation for twenty days. *Id.* at ¶ 37.

### III.    Discussion

Ruiz contends that Officers Taranovich and John Doe 1, 3 and 4 and Lieutenant John Doe 2 violated the Eighth Amendment's prohibition on cruel and unusual punishment, and additionally committed assault and battery, when they used excessive force to restrain him during the incident on March 30, 2017. Ruiz additionally contends that by failing to provide treatment for the injuries occasioned by that assault, the medical provider defendants—Nurse Jane Doe 1 and 2 and Psychiatrist John Doe—were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment claims and negligent in violation of state law. Ruiz also appears to raise claims against Officer Beltran for disciplining him after he expressed his intention to file a lawsuit regarding the assault.

### 1.    Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") requires that, prior to bringing a civil suit challenging prison conditions, a plaintiff must "exhaust such administrative remedies as are available." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (*quoting* 42 U.S.C. § 1997e (a)). Because Ruiz is incarcerated in a Connecticut correctional facility, the administrative remedies available to him for resolving administrative or healthcare related issues are provided by the

Connecticut Administrative Directives, which are written guidelines that establish "the parameters of operation for Connecticut correctional facilities." *Nicholson v. Murphy*, 2003 U.S. Dist. LEXIS 22165, at *18 n.2 (D. Conn. Sept. 19, 2003).

At the time he filed the original complaint in the case at bar, Ruiz additionally filed fifty-five pages of exhibits. Included with those exhibits is an inmate request form from 2017 (the exact date of filing is not clear) requesting that "the four officers from Garner involved in my 3-30-17 incident" be reprimanded for the use of excessive force. *See* Pl.'s Exs. Doc. No. 9 at 11. At the bottom of that form is a notation from someone in the warden's office noting: "all use of force incidents are reviewed and appropriate action is taken as needed." *Id.* There is no indication that any follow-up action was taken, or that Ruiz was permitted to appeal that disposition of the request. Ruiz additionally submits as an exhibit an inmate request form asking to be seen by a medical provider for his broken nose in April 2018; in response to that request is a notation that he was placed on the "sick call list." *Id.* at 12. He appears to have followed up on that request by filing an administrative remedy form on May 10, 2018 again requesting treatment for his broken nose. *Id.* at 13. At the bottom of that form is a notation that he was seen by a medical provider on May 17, 2018. *Id.* The form provides no additional detail regarding what treatment or tests he received, whether the issue with his nose was remedied or whether he was permitted to appeal the disposition.

Because it is not clear that Ruiz failed to exhaust his administrative remedies regarding either request, I will not dismiss the action at this stage for failure to exhaust administrative remedies prior to filing suit.

### 2.    Eleventh Amendment Immunity

Ruiz sues all defendants in both their individual and official capacities. Under the

Eleventh Amendment, suits seeking money damages from state officials in their official

capacities are barred by the doctrine of sovereign immunity. *See Kentucky v. Graham*, 473 U.S.

159, 169 (1985) ("absent waiver by the State or valid congressional override, the Eleventh

Amendment bars a damages action against a State in federal court. This bar remains in effect

when state officials are sued for damages in their official capacity.") (citation omitted). That bar

does not apply, however, when a plaintiff seeks money damages from a state official in his or her

individual capacity—even if the alleged wrongdoing occurred during the course of official

duties. *Hafer v. Melo*, 502 U.S. 21, 31 (1991) (state officials are not "absolutely immune from

personal liability under § 1983 solely by virtue of the 'official' nature of their acts."),

Accordingly, Ruiz may seek money damages for violations of his constitutional rights under

section 1983 against defendants sued in their individual capacities.

Under the doctrine set forth in *Ex Parte Young*, state officers may additionally be sued in

their official capacities so long as a plaintiff seeks prospective injunctive relief for violations of

constitutional rights or federal law. *Ex Parte Young*, 209 U.S. 123 (1908); *see also CSX Transp.,

Inc. v. New York State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002). In the Second

Circuit, however, "an inmate's transfer from a prison facility generally moots claims

for...injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272

(2d Cir. 2006). Here, although Ruiz has been transferred three times since filing the original

complaint in this action (*see* doc. no. 21, 24, 29) his request for injunctive relief does not relate to

conditions at a particular facility. He instead seeks an order directing the defendants to afford

him treatment for his broken nose. Because that request is not tied to conditions at Garner, I will

not dismiss the request as moot. *See Licari v. Semple*, 2018 U.S. Dist. LEXIS 140585, at *13 (D. Conn. Aug. 20, 2018) ("Although the plaintiff is no longer confined at the same facility in which he was confined when he filed this action, his request for injunctive relief is not related to conditions at a particular facility. Thus, the court concludes that it is not barred as a result of his transfer to another facility.").

    **3.    Eighth Amendment Claims**

        A.    <u>Deliberate Indifference to Serious Medical Needs</u>—Nurse Jane Doe 1 and 2, John Doe Psychiatrist

Ruiz contends that the medical provider defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by failing to treat his swollen, bruised face and broken nose during the nearly two weeks he was kept in IPM. He notes that Nurse Jane Doe 1 and Jane Doe 2 examined him daily, including taking his vital signs and that he repeatedly told them that his nose was broken. Neither nurse provided him with any treatment for the broken nose or for the bruising and swelling. Psychiatrist John Doe additionally met with him multiple times during his confinement in IPM but failed to provide him any treatment for his face or broken nose.

 Ruiz brings those Eighth Amendment claims under section 1983, a federal statute that provides a private cause of action against state officials for the deprivation of rights secured by the Constitution or federal law. 42 U.S.C. § 1983. Because Congress enacted no statute of limitations for claims raised under section 1983, courts considering the timeliness of those claims "must borrow a state statute of limitations." *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994). The Second Circuit has provided that Connecticut General Statutes Section 52-577, which establishes a three-year statute of limitations for actions sounding in tort, offers the most

appropriate statute of limitations for section 1983 claims raised against Connecticut state officials. *Id.* at 134.

Although section 1983 looks to state law for the relevant statute of limitations for bringing a claim, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). Under established precedent in the Second Circuit, the accrual date for section 1983 actions occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (internal quotation marks and citation omitted).

Here, Ruiz alleges that the medical providers failed to tend to his injuries between March 30 and April 12 of 2017. Because he sets forth no facts to support an inference that he was unaware of the facts supporting a claim for deliberate indifference at that time, the accrual date occurred no later than than April 12, 2017. Although Ruiz filed his original complaint within three years of April 12, 2017, he initially brought claims only against the correctional officer defendants and did not reference the medical provider defendants or allege that he had been denied adequate treatment. *See* Compl. Doc. No. 1. He did not seek leave to amend the complaint to add the medical provider defendants until January 26, 2021. *See* Doc. No. 25. Accordingly, the claims raised against the medical providers fall far outside the three-year statute of limitations applicable to section 1983 actions against Connecticut officials.

Ruiz additionally sets forth no facts to suggest that the claims against the medical providers should be treated as timely under Federal Rule of Civil Procedure 15(c).[2] Under that

---

[2] Rule 15(c)(1) provides: An amendment to a pleading relates back to the date of the original pleading when:
   **(A)** the law that provides the applicable statute of limitations allows relation back;

rule, an amended pleading otherwise barred by the relevant statute of limitations may "relate

back" to the timely filed original pleading if certain conditions are met. The Second Circuit has

set forth the following requirements for a claim adding a new party to "relate back" under Rule

15(c)(1)(c):

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the
> party to be brought in must have received such notice that it will not be prejudiced in
> maintaining its defense; (3) that party should have known that, but for a mistake of
> identity, the original action would have been brought against it; and (4) the second and
> third criteria are fulfilled within 120 days of the filing of the original complaint, and the
> original complaint was filed within the limitations period.

*Hogan*, 738 F.3d at 517 (citation omitted). Here, because Ruiz did not raise any claims regarding

the lack of access to medical treatment in his original complaint, there is no indication that the

failure to name the medical provider defendants was the result of a mistake of identity or error

rather than a decision not to raise those claims initially. *See Neal v. Wilson,* 239 F. Sup. 3d 755,

759 (S.D.N.Y. 2017) ("Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure…applies only

where an amendment changes the party or the naming of the party against whom a claim is

asserted—not where an amendment adds a previously unmentioned party.") (collecting cases).

Moreover, although Rule 15(c)(1)(a) additionally permits a proposed amendment to relate back

if the law that provides the applicable statute of limitations would permit relation back,

Connecticut law is no more forgiving than federal law with regard to the addition of a new party.

---

**(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or
occurrence set out—or attempted to be set out—in the original pleading; or
**(C)** the amendment changes the party or the naming of the party against whom a claim is asserted,
if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the
summons and complaint, the party to be brought in by amendment:
>    **(i)** received such notice of the action that it will not be prejudiced in defending on the
>    merits; and
>    **(ii)** knew or should have known that the action would have been brought against it, but
>    for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

*See Palazzo v. Delrose*, 91 Conn. App. 222, 226 (2005) ("if the amendment is deemed to be a substitution or entire change of a party, it will not be permitted."). Accordingly, Ruiz's claims against the medical provider defendants do not relate back under either of the possible routes identified by Rule 15(c)(1).

Although Ruiz's claims against the medical providers do not relate back to the original complaint, Connecticut law provides that the statute of limitations under section 52-577 may be tolled under certain circumstances. Specifically, tolling is available where a plaintiff adequately alleges that a defendant either engaged in a continuous course of wrongful conduct or fraudulently concealed a cause of action. *Lenti v. Connecticut*, 2020 U.S. Dist. LEXIS 131189, at *17 (D. Conn. July 24, 2020). To support a finding that a defendant engaged in a continuing course of wrongful conduct, a plaintiff must set forth "evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto" or evidence of "some later wrongful conduct of a defendant related to the prior act." *Watts v. Chittenden*, 301 Conn. 575, 585 (2011). To prove fraudulent concealment, a plaintiff must ultimately show: "(1) the defendants' actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiff's cause of action; (2) the defendants' intentional concealment of these facts from the plaintiff; and (3) the defendants' concealment of these facts was for the purpose of obtaining delay on the plaintiff's part in filing a complaint on his cause of action." *Macellaio v. Newington Police Dept.*, 145 Conn. App. 426, 432 (2013).

Ruiz, proceeding *pro se*, does not address either the statute of limitations or argue in favor of tolling in the Second Amended Complaint. Despite that, I will not dismiss the claims as untimely without providing him the chance to set forth facts in support of the argument that

tolling is warranted. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) ("the District Court should not have dismissed [plaintiff's] complaint on the basis of an anticipated statute-of-limitations defense without granting [plaintiff] notice and an opportunity to be heard."). Accordingly, the claims raised against the medical provider defendants are dismissed without prejudice. To the extent that Ruiz possesses additional facts supporting a finding that the statute of limitations should be tolled, he may amend the complaint to include those facts.

> B.   <u>Excessive Force</u>—Officer Taranovich, Lieutenant John Doe 2 and Officers John Doe 1, 3 and 4

Ruiz brings claims under the Eighth Amendment against Officer Taranovich, John Doe 1, 3 and 4 and Lieutenant John Doe 2 arising out of the March 30, 2017 incident.

> i.    Officer John Doe 4

In his original timely-filed complaint, Ruiz raised claims against four correctional officers: Officer Taranovich, Officer John Doe 1 and 3 and Liuetenant John Doe 2. Because he did not originally raise claims against a fourth correctional officer, the claims against Officer John Doe 4 are not timely filed. Moreover, Ruiz has set forth no facts to support a conclusion that the claims should relate back under Rule 15(c)(1). To the extent that Ruiz possesses additional facts to support the finding that the statute of limitations should be tolled with regard to the claim against Officer John Doe 4, he may include those facts in any amended complaint.

> ii.   Lieutenant John Doe 2, Officers John Doe 2 and 3

Because the claims against Officer John Doe 1 and 3 and Lieutenant John Doe 2 were raised in the original, timely filed complaint, I will consider whether those allegations state plausible claims for relief. *See* Compl. Doc. No. 1.

11

The Eighth Amendment's prohibition on the "unnecessary and wanton infliction of pain" has been interpreted to encompass the use of excessive force by correctional officers against an incarcerated individual. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To state a claim for excessive force under the Eighth Amendment, an incarcerated individual must allege both (1) that prison officials subjected him or her or her to "sufficiently serious" harmful conduct; and (2) that the officials did so with a culpable state of mind. *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). Both inquiries are fact-dependent; the Supreme Court has provided guidance, but not bright-line rules, for determining whether the conduct of prison officials implicates the Eighth Amendment. *Hudson*, 503 U.S. at 8 ("the Eighth Amendment's prohibition of cruel and unusual punishments draws its meaning from the evolving standards of decency that mark the progress of a maturing society, and so admits of few absolute limitations.") (citation omitted).

Conduct by prison officials is "objectively harmful enough…to reach constitutional dimensions" where it is "incompatible with evolving standards of decency" or involves "the unnecessary and wanton infliction of pain." *Crawford*, 796 F.3d at 256 (citations omitted). Not "every malevolent touch by a prison guard gives rise to a federal cause of action" and the "*de minimus* use[] of physical force" does not implicate the Eighth Amendment "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citation omitted). Although injury (or lack thereof) may be relevant to the inquiry of whether excessive force was used, "[i]njury and force…are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). Accordingly, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* The "malicious[]

and sadistic[]" use of force violates "contemporary standards of decency" whether or not the force occasions serious injury. *Hudson*, 503 U.S. at 9.

Objectively harmful conduct alone is not enough, however; prison officials must also have acted with a sufficiently culpable state of mind in inflicting harm. The "core judicial inquiry is…whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. If "no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may…be sufficient evidence of a culpable state of mind." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). "[T]he need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response" are indicative of whether the use of force was indeed driven by legitimate purpose or instead wanton or unnecessary. *Hudson*, 503 U.S. at 7 (citation omitted). In addition, "the extent of injury suffered by an inmate" may be indicative of "whether the use of force could plausibly have been thought necessary." *Id.* (citation omitted).

Here, Ruiz alleges that in response to his unsuccessful swing at Officer Taranovich, Officer Taranovich, Lieutenant John Doe 2 and Officers John Doe 1 and 3 tackled him to the ground, held back his arms and legs and sprayed him in the face and mouth with mace. As Ruiz lay on his stomach with his hands behind his back, Officer Taranovich pressed his knee into Ruiz's neck and punched Ruiz over and over—at least ten times—in the face. Correctional Officer John Doe 3 hit Ruiz in the torso and legs. Those allegations, coupled with Ruiz's claim that the assault left him with a broken nose and severe bruising, are clearly sufficient to meet the

13

requirement of objectively harmful conduct that is more than merely a "malevolent touch."

*Hudson*, 503 U.S. at 10. Moreover, Ruiz has adequately alleged that in doing so, the officers

acted with a culpable mental state. Even after Ruiz was on the ground with his hands behind his

back telling the officers that he was struggling to breathe, the officers continued to beat him and

additionally sprayed him with mace in the face and mouth. Those allegations clearly support the

inference that there was no "reasonably perceived penological need existed for the application of

such force." *Hogan*, 738 F.3d at 516.

### 4.   Fourteenth Amendment Claim

In the body of the complaint, Ruiz additionally appears to raise claims against another

correctional officer, Officer Beltran. Ruiz contends that after he told Officer Beltran about the

assault and expressed his intent to file a lawsuit, he was called to a Lieutenant's office, given a

disciplinary report and sent to segregation for twenty days, in violation of the provisions of the

Connecticut Administrative Directives.

Because Ruiz does not name Officer Beltran as a defendant or seek relief relating to those

allegations, I do not construe those statements as raising a First or Fourteenth Amendment claim

against Officer Beltran. To the extent that Ruiz seeks to add Officer Beltran as a defendant, he

may specify the claims he seeks to raise against Officer Beltran in an amended complaint.

Moreover, because any possible claims raised against Officer Beltran appear from the face of the

complaint to be barred by the three-year statute of limitations applicable to section 1983 claims,

Ruiz must raise any arguments in support of tolling in the amended pleading.

### 5.   State-Law Claims

#### i.   Negligence—Nurse Jane Doe 1 and 2, John Doe Psychiatrist

In addition to the claims raised under section 1983, Ruiz brings state-law negligence claims against the medical provider defendants. Under Connecticut law, claims seeking damages against state employees in their individual capacities are barred under Connecticut General Statutes section 4-165(a), which provides: "[n]o state officer or employee shall be personally liable for damages or injury, not wanton or reckless or malicious, caused in the discharge of his duties or within the scope of his employment." State employees therefore cannot be held personally liable for negligent actions so long as those actions are performed within the scope of employment. *Miller v. Egan,* 265 Conn. 301, 319 (2003). In order to overcome that statutory bar, a plaintiff must adequately allege that the official's conduct was "wanton, reckless or malicious", a standard defined by Connecticut courts as "more than negligence, more than gross negligence." *Martin v. Brady*, 261 Conn. 372, 379 (2002).

Ruiz has raised only a claim of simple negligence against the medical provider defendants and does not allege that either the nurses or psychiatrist were acting outside the scope of employment during the alleged denial of care. Accordingly, the state law negligence claims asserted against the defendants in their individual capacities are dismissed as barred by statutory immunity under Conn. Gen. Stat. § 4-165. *See* 28 U.S.C. § 1915A(b)(2).

To the extent Ruiz seeks instead to bring a claim for negligence against the medical providers in their official capacities, "[i]t is settled law in Connecticut that the state is immune from suit unless, by appropriate legislation, it authorizes or consents to suit." *First Union Nat'l Bank v. Hi Ho Mall Shopping Ventures*, *Inc.*, 273 Conn. 287, 293 (2005) (citation omitted). The principle of sovereign immunity applies to lawsuits against a state as well as to lawsuits against a state official in his or her official capacity. "[B]ecause the state can act only through its officers

15

and agents, a suit against a state officer concerning a matter in which the officer represents the

state is, in effect, against the state." *Miller*, 265 Conn. at 313. There are three recognized

exceptions to that bar on suits against states and state officials:

> (1) when the legislature, either expressly or by force of a necessary implication,
> statutorily waives the state's sovereign immunity; (2) when an action seeks declaratory or
> injunctive relief on the basis of a substantial claim that the state or one of its officers has
> violated the plaintiff's constitutional rights; and (3) when an action seeks declaratory or
> injunctive relief on the basis of a substantial allegation of wrongful conduct to promote
> an illegal purpose in excess of the officer's statutory authority.

*Columbia Air Services v. DOT*, 293 Conn. 342, 349 (2009) (citations omitted). In the absence of

statutory waiver, a "plaintiff may not bring an action against the state for monetary damages

without authorization from the claims commissioner to do so." *Id.* at 351.

Ruiz alleges no facts to suggest that statutory immunity has been waived. Although he

does submit a request filed with the Claims Commissioner seeking approval to file suit against

the correctional officer defendants, he does not allege that he has sought or received

authorization to file a claim against the medical provider defendants. Accordingly, to the extent

that Ruiz seeks money damages from the medical providers sued in their official capacities, that

request is barred by sovereign immunity and the claims are dismissed. *See* 28 U.S.C. §

1915A(b)(1)-(2).

With regard to the request for injunctive relief, Ruiz sets forth no facts to suggest that the

medical provider defendants acted outside the scope of their statutory authority in denying care

for his broken nose or the painful swelling in his face. *See Columbia*, 293 Conn. at 354 (a

plaintiff must do more than "than make a conclusory allegation that the defendants' conduct was

in excess of their statutory authority; it must allege facts that reasonably support such an

allegation."). Moreover, the negligence claim does not fall within the second exception to

sovereign immunity for claims alleging violations of constitutional rights. *See id.; see also Matias v. Anderson*, 2020 U.S. Dist. LEXIS 22444, at *10 (D. Conn. Feb. 10, 2020) ("the first and second exceptions [to sovereign immunity] do not apply to [plaintiff's] *negligence* claim against [defendant] in her official capacity.") (emphasis in original). Finally, the Second Circuit has interpreted the Eleventh Amendment to prohibit federal courts from entering prospective injunctive relief against state officials in their official capacities solely on the basis of state law claims. *See Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) ("To the extent Plaintiffs seek prospective relief against Defendants in their official capacity for violations of the Connecticut Constitution and state law, those claims are indeed barred by the Eleventh Amendment under the *Pennhurst* doctrine.") (internal quotation marks omitted). Accordingly, Ruiz's state-law negligence claims seeking injunctive relief are dismissed.[3] *See* 28 U.S.C. § 1915A(b)(1).

     ii.    <u>Assault and Battery</u>—Officer Taranovich, Lieutenant John Doe 2 and Officers John Doe 1 and 3

Ruiz contends that the use of excessive force by the correctional officer defendants constituted assault and battery under Connecticut law. Under Connecticut law, "liability for battery arises if (a) a person acts intending to cause a harmful or offensive contact with the person of the other or a third person…and (b) a harmful contact with the person of the other directly or indirectly results." *Simms v. Chaisson*, 277 Conn. 319, 331 (2006) (citing Restatement (Second), Torts § 13 (1965)). "Liability for assault arises if (a) a person acts intending to cause a harmful or offensive contact with the person of the other…and (b) the other

---

[3] I note that from the face of the complaint, it appears that Ruiz's negligence claims would additionally be barred by the statute of limitations. Under Connecticut General Statutes § 52–584, actions sounding in negligence or medical malpractice are governed by either a two or three-year statute of limitations. Ruiz's claims against the medical provider defendants accrued no later than April 12, 2017 and are therefore untimely filed. Because I determine that the claims are barred by statutory and sovereign immunity, I do not address the extent to which tolling of that

is thereby put in such imminent apprehension." *Id.* To "constitute an actionable assault and battery there must have been an unlawful force applied to one person by another." *Moriarty v. Lippe*, 162 Conn. 371, 389 (1972).

Here, the same allegations that Ruiz relies upon to plead a claim for excessive force give rise to cognizable claims for assault and battery. Although Ruiz does not allege that sovereign immunity has been waived, the assault and battery claims against the correctional officers sued in their individual capacities may proceed.[4] *See Miller*, 265 Conn. at 319 ("State employees do not…have statutory immunity for wanton, reckless or malicious actions or for actions not performed within the scope of their employment. For those actions, they may be held personally liable"). Moreover, because the claims for assault and battery arise out of the same set of facts as Ruiz's Eighth Amendment claim, I will exercise supplemental jurisdiction over those claims. 28 U.S.C. § 1367.

## IV.    Conclusion

For the foregoing reasons, the claims seeking money damages from the correctional officer defendants sued in their official capacities for violations of the Eighth Amendment are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). The claims seeking money damages against Officer Taranovich, Lieutenant John Doe 2 and Correctional Officers 1 and 3 in their individual capacities will proceed, as will the request for injunctive relief brought against the defendants in their official capacities. I will additionally exercise supplemental jurisdiction over the related

---

limitations period may apply.

[4] Although Ruiz submits as an exhibit a copy of a request filed with the Claims Commissioner in relation to the assault by the correctional officers, he does not allege that he received authorization to file suit. Accordingly, claims for money damages against the officials in their official capacities are barred by sovereign immunity. Additionally, as discussed above, Ruiz may not seek prospective injunctive relief against the defendants in their official capacities on the basis of state-law claims. *See Vega*, 963 F.3d at 283-84.

assault and battery claims. The claim against Officer John Doe 4 is **DISMISSED WITHOUT PREJUDICE.**

The claims seeking money damages from the medical provider defendants sued in their official capacities for violations of the Eighth Amendment are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). The claims seeking money damages from the medical provider defendants sued in their individual capacities are **DISMISSED WITHOUT PREJUDICE**. The negligence claims raised against those defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).

**2.     Motion for Service [Doc No. 26]**

Ruiz requests that the court serve the individuals listed as defendants in the second amended complaint. Service on the Doe defendants cannot be effectuated until Ruiz obtains their names from the DOC. An order directing service on Officer Taranovich in his individual capacity will enter in conjunction with the filing of the Initial Review Order. Accordingly, the motion for service is **DENIED.**

**It is hereby ordered that:**

**(1)**     The Clerk cannot effect service of the second amended complaint on Lieutenant John Doe 2, Correctional Officer John Doe 1 or Correctional Officer John Doe 3 in their individual capacities because Ruiz has not provided the court with first or last names for those Doe defendants. Ruiz will have ninety (90) days from the date of this order to conduct discovery and file a notice identifying Lieutenant John Doe 2 by his first and last name, Correctional Officer John Doe 1 by his first and last name, and Correctional Officer John Doe 3 by his first and last name.  I will dismiss the claims against any Doe defendant for whom Ruiz does not provide a first and last name within ninety days of the date of this order.

I note that Ruiz indicates that the John Doe defendants can be identified by name from the incident report generated in connection with the March 30, 2017 use of force by those defendants. SAC at 3. In the exhibits originally filed, Ruiz includes copies requests that he made under Connecticut's Freedom of Information Act ("FOIA") in 2017 for a copy of the October 30, 2017 incident report and the Department of Correction's responses to the FOIA request, including a letter dated November 7, 2017 indicating that the copies of the documents were available to be purchased by Ruiz at a cost of $10.75. Ruiz's inmate account statements reflect that he regularly receives $100.00 or more each month from his mother. Thus, it is apparent that he has the funds to pay the copying cost of the October 30, 2017 incident report.

**(2)** Any Amended Complaint shall be filed through the Prison Efiling Program within thirty (30) days from the date of this order.

**(3)** The Clerk shall verify the current work address of CTO Taranovich and mail a copy of the second amended complaint, this order, and a waiver of service of process request packet to defendant Taranovich in his individual capacity at his confirmed address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of the request. If defendant Taranovich fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and defendant Taranovich shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(4)** Defendant Taranovich shall file his response to the second amended complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to him  If he choose to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above. He may

20

also include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order.  Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(7)     If Ruiz changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Ruiz should write PLEASE NOTE MY NEW ADDRESS on the notice. Putting a new address on a letter without indicating that it is a new address is insufficient.  If Ruiz has more than one pending case, he should indicate all case numbers in the notification of change of address.  Ruiz should also notify the attorney for the defendants of his new address.

(8)      Ruiz shall utilize the Prisoner Efiling Program when filing documents with the court.  Ruiz is advised that the Program may be used only to file documents with the court. Local Court Rule 5(f) provides that discovery requests are not to be filed with the court. Therefore, discovery requests must be served on defendants' counsel by regular mail.

(9)     The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties.  The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

(10)     **The Clerk shall** send a courtesy copy of the second amended complaint, and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

21

The Attorney General and the Department of Correction Legal Affairs Unit Shall preserve any video evidence of the incident referenced in the second amended complaint.


So ordered.

Dated at Bridgeport, Connecticut, this 5th day of May 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
